LOTTINGER, Judge.
This matter is before us on an appeal taken by the plaintiff from a judgment of the Lower Court which dismissed her suit for damages individually and for the use and benefit of her minor child arising out of an accident involving three cars which occurred on U. S. Highway 190 at about 8:10 P.M. on Sunday, October 19, 1958.
The record shows that U. S. Highway 190 at the scene of the accident runs in an East-West direction with two lanes for East bound traffic and two lanes for West bound traffic, separated by a neutral ground. The record further shows that just previous to the accident a 1949 Ford automobile owned by Peter Wilkins was proceeding Easterly on the aforesaid highway in the “slow” or South lane followed by a 1949 Plymouth automobile owned and operated by one Fred D. Hall which was in turn followed also in the South lane by a 1955 Oldsmobile automobile owned and operated by Ferman Rachel. The petitioner’s minor child was a guest passenger in the Hall vehicle and joined as defendants are Wilkins and his liability insurer together with Rachel and his liability insurer, it being al *319 leged that the accident was caused by the negligence of Wilkins in stopping suddenly without giving the proper signal and by the negligence of Rachel by also stopping suddenly without giving the proper signal. Subsequent to a pre-trial conference, the suit was dismissed as to Rachel and his insurer, from which judgment no appeal was taken, thus leaving for our consideration only the negligence, vel non, of Wilkins.
The defendant Wilkins testified that just previous to the accident he was proceeding East or towards Baton Rouge in the South lane followed by the Hall vehicle and that it was necessary for him to come to a stop due to the fact that a barricade had been erected in his path of travel. His testimony is as follows:
“Q. Now you come driving down the road and you are getting closer and closer and closer to this barricade ?
“A. That’s right.
“Q. Now, as you are driving down the road getting closer and closer to this barricade, tell me what you did up until the time he ran into you.
“A. Just drive on up there and when I got close to it, well, quite natural I cut my speed where I wouldn’t have to slide no tires and how I be able to stop there and directly after I stopped there he come (clapping his hands). That’s the way it was done.
“Q. Didn’t slide those tires ?
“A. No, sir. No, sir.
“Q. Just came down to a gradual stop?
“A. That’s right
“Q. No skidding?
“A. No skidding. That’s what I want you to understand. That’s what I thought you was going to ask me.
“Q. You had your arm out the window to—
“A. I stuck my hand out the window long enough for him to see it.
“Q. Let me ask you something. How did you put your brakes on ? Did you have to put them on suddenly or did you put them on gradually ?•
“A. No, Sir, I just put them on gradually and come to a normal stop.
“Q. If I told you on that day you told me you slammed your brakes on and today you said you put them on easy, which would be right, slamming on your brakes or putting them on easy?
“A. I put on my brakes easy, that would be right. I put it on and mashed the brakes down. That is all there is to it.
“Q. You testified on your way out over here — that you saw this barricade and you knew about it?
“A. That’s right.
“Q. You saw it up there and started slowing down?
“A. When I got up there, I wouldn’t walk in a mud hole knowing it was a mud hole there.
“Q. You did slam on your brakes then?
“A. I put on my brakes and stopped.
“A. I stopped in plenty of time enough for Hall to stay off of me, way plenty of time. I didn’t pull my watch out or didn’t have it on to know how to tell how many times I had been setting there either, but I had stopped a complete stop, and I didn’t skid no brakes, so I got that just like it is.”
*320 The accident was investigated by Aubrey Lee Hamilton of the Louisiana State Police Department who gave no testimony regarding any skid-marks left by the Wilkins vehicle. It was stipulated that Officer Hamilton was assisted in his investigation by Trooper Denicola and that if the latter had been called, his testimony would have been substantially that of Trooper Hamilton.
Ferman Rachel, who was subpoenaed by the plaintiff was not called upon by the latter to testify but was put on the stand by. counsel for Wilkins. He gave the following version of the accident:
“Q. Now (Mr. Maughan was drawing on the blackboard) — let this drawing represent your Oldsmobile. You say you were approximately a hundred feet from the barricade when you first noticed it, is that right?
“A. That’s right.
“Q. And you first noticed it when you got out in the fast lane, is that right ?
“A. Yes.
“Q. And you couldn’t see the barricade — now did you see the barricade when you first pulled out or did you have to wait till you got right up even with the other car before you saw the barricade ?
“A. After I pulled up, I would say alongside Fred’s car.
“Q. Fred’s car being which car?
“A. Being the car that was right behind .the car that was in front.
“Q. It was at that time you could see the barricade?
“A. Well, yes, and we were pretty close to the car that was the front car.
“Q. About how fast were you going then ?
“A. I would say I had slowed down to approximately — -I would say approximately forty-five or fifty..
“Q. Is that correct?
“A. Well, that is approximately. I couldn’t give you no definite—
“Q. It could be a few feet either way—
“A. I say I din’t think anybody could tell the exact feet, but I could say approximately about it.
“Q. Now what was the position of the Hall car at that time ?
“A. The Hall car was in the right lane.
“Q. About even with you or in front of you?
“A. About even with me I would say.
“Q. What was the position of the automobile driven by Peter Wilkins ?
“A. I would say it was up a little further. I was either going very slow or stopped. I know — he undoubtedly had .his feet on the brakes because I could see the lights out there..
“Q. When could you first notice this light on his car?
“A. I could see that he had lights on his car at all times.
“Q. What was the position of your car when you first saw the brake lights on his car? Were you behind it, behind Hall’s car or were you up by the side of it?
“A. Well, I would say just before I caught up with Hall’s car.
“Q. In other words, you pulled out in the fast lane — just about to catch Flail’s car?
“A. That’s right, and I saw the taillights on the Williams’ car.
*321 "Q. The Wilkins’ car.
■“A. That’s right.
“‘Q. They flared up?
“A. That’s right.
"Q. How far away from the barricade do you estimate that the Hall and the Wilkins’ car contacted each other ?
“A. I would say about approximately about fifty feet.
<!Q. Fifty or sixty feet from the barricade ? When the initial contact occurred?
“A. That’s right. I would say the Hall car was about that distance from the barricade. I mean the Wilkins’ car.
“Q. What was the Wilkins’ car doing at the time of the contact between his car and the other one? What was the Wilkins’ car doing?
“A. You mean just before the impact?
“Q. I mean at the time of the impact.
“A. Well, as I say, the Wilkins’ car was almost to the barricade either stopped or going very slow and after the Hall car ran into the rear of the Wilkins’ car, the Wilkins’ car cut on out to the left and went around the barricade.
“Q. You say it was moving slow or stopped, why do you say that?
“A. I could see he had the lights lit up like he had his brakes on. I mean I was fixing to pass him.”
The plaintiff’s minor daughter did not remember enough of the accident for her testimony to be of any particular value.
One Melinda Blacher testified that she was riding in the back seat of the Wilkins’ car, remembered seeing the lights of the barricade and that Wilkins had stopped in the slow lane when he was struck from the rear.
Wilkins’ wife, Lucinda, testified that she was riding in the front seat with her husband who had slowed down and stopped about two car lengths from the barricade when he was struck by the Hall vehicle.
Hall himself testified as follows:
“Q. Which lane had you been driving in?
“A. I was in the slow lane.
“Q. When did you attempt to get in the fast lane?
“A. When the accident occurred.
“Q. When did you first see that — is it your testimony that you first saw that car in front of you when you were only a car length away from it?
“A. That’s right.
“Q. Were you looking down the road ?
“A. Yes sir. Do you want me to sketch it out on there for. you just like it happened?
“Q. I will tell you if I do. Just answer my questions now. I want to know why you didn’t see that car in front of you.
"A. I didn’t see it until I got right up on it.
“Q. And you just ran into the back of him?
“A. Yes, sir.
“Q. Did you see any signal like he was going to slow down or stop?
“A. I didn’t even see the lights on the back.
“Q. Did you see the lights on the front of it?
“A. On the front of the Ford?
*322 “Q. Yes.
“A. I couldn’t even see in the front of him.
“Q. Why didn’t you see that barricade up there?
“A. I didn’t see it.”
With the foregoing before him, the Trial Judge made the following factual findings:
“The negligence of Fred Hall was the sole and only cause of this accident He was driving a 1949 Plymouth, 4-Door sedan in an easterly direction on Highway 190 and was following a 1949 Ford 4-Door, driven by Peter Wilkins, and ran into the rear of the Wilkins’ car.
“At the point of the accident, U. S. Highway 190 has two lanes of traffic for east-bound traffic (toward Baton Rouge) and two lanes for West-bound traffic separated by a neutral ground. Peter Wilkins was driving in the south lane of traffic of the east-bound traffic lanes, or the driving lane, and proceeded to a point on the highway where the south lane of traffic was blocked by a barricade. The barricade was well lighted and the testimony shows that Peter Wilkins well knew of its presence, having travelled past it earlier in the evening. There is conflicting testimony as to whether Peter Wilkins was stopped at the time of the accident waiting for the traffic in the passing lane to clear before going around the barricade, or whether he had slowed down and was practically stopped at the time of the accident.
“From the whole of the testimony, the Court is of the opinion that Peter Wilkins was slowing to make a stop at the barricade and did not suddenly slam on his brakes and create a sudden emergency as contended by counsel for plaintiff. This is not even borne out by plaintiff’s own witness Ferman Rachel. He saw the brake lights go on on the Wilkins’ car and stated the Wilkins’ car was moving slowly at the time of the accident. Peter Wilkins and the passengers in his car stated that they were stopped for some time before the accident occurred. Fred Hall, who was subpoenaed by plaintiff but was called as a witness for defendant, stated that he did not see the Wilkins’ car until he was about a car and a half length away and was driving 55 miles per hour at the time and hit the Wilkins’ car going about 50 miles per hour. From this testimony, the Court concluded that the sole and only cause of the accident was Fred Hall, who was not keeping a proper look out.”
The question presented is purely a factual one which we think was decided correctly by the Lower Court whose judgment will therefore remain undisturbed.
Judgment affirmed.